EVAN KROLL (SBN 333754)
ekroll@mcdermottlaw.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 277-4110

Attorneys for Defendant
G2I Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES WALLACE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>G2I Inc., a Florida corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**DECLARATION OF EVAN KROLL IN SUPPORT OF DEFENDANT G2I INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[Removed from Butte County Superior Court, Case No 26CV02192]<br><br>Complaint filed: May 19, 2026<br>FAC filed: September 8, 2026<br>Trial date: TBD |



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

# DECLARATION OF EVAN E. KROLL

I, Evan Kroll, declare:

1. I am an attorney licensed to practice law before this Court and am an associate at the law firm of McDermott Will & Schulte LLP, counsel of record for Defendant G2I Inc. ("G2I"). I make this declaration in support of G2I's notice of removal to federal court. The statements contained in this declaration are true and based on my personal knowledge, except as otherwise indicated. If called upon as a witness to testify to these statements, I could and would competently do so under oath.

2. On May 19, 2026, Plaintiff Charles Wallace, *in pro per* ("Plaintiff"), initiated this lawsuit in the California Superior Court, County of Butte, by filing a verified civil complaint the ("State Court Action"). In his May 19 complaint, Plaintiff asserted two causes of action related to G2I's alleged failure to provide employment records upon request. The amount put in controversy by way of the May 19 complaint did not exceed $75,000. Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's May 19, 2026 civil complaint.

3. On June 29, 2026, Plaintiff served the May 19 complaint on G2I. G2I does not concede or admit that Plaintiff properly served G2I, however, such information is irrelevant of purposes of G2I's removal.

4. On August 13, 2026, Plaintiff filed a request for entry of default in the State Court Action.

5. On September 8, 2026, Plaintiff filed a verified first amended complaint in the State Court Action, asserting several additional causes of action and requesting economic and emotional distress damages. Moreover, Plaintiff's September 8 first amended complaint specifically requests more than $75,000.00 exclusive of interest and costs. Thus, grounds to remove the matter were first asserted in this September 8, 2026 first amended complaint. Attached here to as **Exhibit B** is true and correct copy of Plaintiff's September 8 first amended complaint.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

6. On September 12, 2026, Plaintiff emailed me to inform me that he had completed service of his September 8 first amended complaint upon G2I's agent for service of process the same day. Given that there is a federal court holiday on October 12, 2026, by filing the instant removal and supporting papers on October 9, 2026, G2I has timely sought to remove the matter in light of the September 12, 2026 date of service and the October 12, 2026 federal court holiday.

7. Aside from filing a notice to state court of removal concurrently with filing the instant removal in federal court, G2I has not otherwise appeared or filed any documents in the State Court Action.

8. No hearings have been conducted in the State Court Action; there is an initial case management conference in the State Court Action scheduled for December 16, 2026.

9. Attached hereto as **Exhibit C** are true and correct copies of the remainder of pleadings, service, and/or other documents filed in the State Court Action. Together, **Exhibits A-C** constitute the entirety of the documents filed in the State Court Action.

10. Given the above and as set forth in detail in the notice of removal, G2I respectfully requests that the United States District Court, Eastern District of California, accept G2I's removal and proceed with this matter.

11. Concurrently with the filing of all of the documents in support of G2I's removal to federal court, my law firm will provide notice to Plaintiff via email at realcharleswallace@gmail.com and via mail at 3723 Foothill Boulevard, Oroville, CA 95966.

///

///

///

///

///

12. G2I specifically reserves its right to move to compel arbitration of this entire lawsuit within the applicable responsive pleading deadline following removal to federal court.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 9, 2026, in Los Angeles, California.

/s/ Evan Kroll
Evan Kroll

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

# EXHIBIT A

Charles Wallace, In Pro Per
3723 Foothill Blvd.
Oroville, CA 95966
Telephone: (346) 249-1507
Email: realcharleswallace@gmail.com

Plaintiff In Pro Per

[FOR CLERK'S USE ONLY]
FILED
Superior Court of California
County of Butte
5/19/2026
Sharif Elmallah, Clerk
By [signature] Deputy
Electronically FILED
FILED

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF BUTTE**

North Butte County Courthouse
1775 Concord Avenue, Chico, CA 95928

**CHARLES WALLACE**, an individual,

Plaintiff,

vs.

**G2I INC.**, a Florida Corporation; and **DOES 1 through 10, inclusive**

Defendants.

**Case No.:** 26CV02192

**VERIFIED COMPLAINT FOR:**
**1. Statutory Penalties (Cal. Lab. Code § 1198.5(k))**
**2. Injunctive Relief (Cal. Lab. Code § 1198.5(l))**

**UNLIMITED CIVIL CASE**

Plaintiff CHARLES WALLACE ("Plaintiff") alleges against Defendant G2I INC. ("Defendant" or "G2i") as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff is an individual currently residing in Butte County, State of California. During his employment with Defendant, Plaintiff relocated from Riverside County to Butte County, and resided in Butte County at the time of his termination and at all times relevant to the claims alleged herein. Plaintiff was employed by Defendant within the State of California.

2. Defendant G2I INC. ("G2i") is a Florida corporation that, at all relevant times, conducted business within the State of California. G2i recruited, hired, directly supervised, evaluated, and terminated Plaintiff. G2i made all decisions concerning Plaintiff's job duties, work assignments, performance, discipline, compensation, and termination; provided Plaintiff with the equipment, accounts, and credentials necessary to perform Plaintiff's work; communicated directly with Plaintiff throughout the recruitment, employment, and post-termination periods; and at all relevant times maintained the personnel records concerning Plaintiff's performance, discipline, termination, and related matters governed by California Labor Code section 1198.5. For purposes of California Labor Code section 1198.5, G2i is Plaintiff's employer, notwithstanding that payroll administration was outsourced to a Professional Employer Organization.

3. Plaintiff's employment with Defendant was administered through Deel PEO, LLC, a non-party Professional Employer Organization. Deel's role was limited to payroll processing, benefits administration, and custody of onboarding and tax-administration documents executed during hiring. The personnel records sought from Defendant in this action — including performance evaluations, internal communications regarding Plaintiff, disciplinary records, termination paperwork, and other operational records concerning Plaintiff's job duties and performance — are records that Defendant, not Deel, maintains. Plaintiff is not asserting any personnel-records claim against Deel in this action and expressly reserves the right to assert claims against Deel in a separate proceeding if necessary.

4. This Court has subject-matter jurisdiction over this action under California Labor Code section 1198.5, subdivision (l), which authorizes a current or former employee to bring an action for injunctive relief, and the Court exercises general equitable jurisdiction over the permanent mandatory injunction sought herein.

5. Venue is proper in this Court because Plaintiff resided in Butte County at the time the obligations giving rise to this action arose and were to be performed. Plaintiff's written request for personnel records was submitted from, and all responsive records were due to be delivered to, that county. (Code Civ. Proc., §§ 395, 395.5.)

6. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint accordingly when the true names of these Defendants are discovered. (Code Civ. Proc., § 474.)

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by Defendant G2I INC. from approximately March 16, 2026, through April 13, 2026.

8. California Labor Code section 1198.5, subdivision (a), provides that every current and former employee, or their representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance, including education or training records, or to any grievance concerning the employee.

9. California Labor Code section 1198.5, subdivision (b)(1), requires the employer to make the personnel records available for inspection, and to provide a copy thereof to the employee, no later than 30 calendar days from the date the employer receives a written request from the employee.

10. On April 14, 2026, Plaintiff transmitted a formal written request to Defendant via electronic mail pursuant to California Labor Code section 1198.5, demanding inspection and copies of Plaintiff's complete personnel file. The request was sent to Defendant's officers at Defendant's corporate email addresses, including Gabriel Greenberg (Defendant's President and Registered Agent), Daniel Pelisson, and Edu Brito. Defendant received the request on April 14, 2026, as evidenced by acknowledgment that same day from Defendant's affiliated Professional Employer Organization, Deel PEO, LLC, on a message that copied Defendant's officers, and further evidenced by Defendant's continued use of those same email addresses for subsequent post-April-14 correspondence with Plaintiff. Defendant did not respond to or acknowledge the records request. The 30-calendar-day statutory clock under California Labor Code section 1198.5, subdivision (b)(1), began to run against Defendant on April 14, 2026.

11. The 30-calendar-day statutory deadline expired on May 14, 2026.

12. As of the date of this filing, Defendant has failed and refused to produce, or make available for inspection, the personnel records required by statute, including but not limited to:

(a) any written documentation of the reason for Plaintiff's termination;

(b) any internal performance evaluations, reviews, performance improvement plans, or written communications relating to Plaintiff's job performance;

(c) any written warnings, disciplinary notices, or records of coaching or counseling;

(d) Defendant's internal records concerning the Checkr background check, including any pre-adverse or adverse action notices, internal communications about the report, and any consideration of the report in employment decisions concerning Plaintiff;

(e) records relating to any grievance or complaint concerning Plaintiff;

(f) education and training records, including trainer name, date, duration, and competencies covered, as required by Labor Code section 1198.5, subdivision (a), effective January 1, 2026;

(g) Defendant's internal onboarding and offboarding documentation, including any checklists, access provisioning or deprovisioning records, asset assignments, internal termination paperwork, and exit interview notes;

(h) attendance records (excluding medical information);

(i) records of any change in employment status, including promotion, demotion, transfer, or reclassification;

(j) any notices of commendation, reward, or positive performance feedback; and

(k) any other personnel records maintained by Defendant relating to Plaintiff's performance or to any grievance concerning Plaintiff, as defined by Labor Code section 1198.5.

13. In addition to personnel records under Labor Code section 1198.5, California Labor Code section 432 provides that if an employee signs any instrument relating to the obtaining or holding of employment, the employee shall be given a copy of the instrument upon request. On April 14, 2026, Plaintiff's written request to Defendant encompassed copies of all signed instruments relating to Plaintiff's employment. To date, Defendant has produced no signed instruments directly in response to that request. Defendant has failed to provide copies of signed instruments within Defendant's possession, custody, or control, including but not limited to: (a) any signed acknowledgment of G2i's employee handbook, company policies, or code of conduct; (b) any nondisclosure or confidentiality agreement to which Defendant is a party; (c) any arbitration agreement to which Defendant is a party or beneficiary independent of any agreement administered by Deel PEO, LLC; and (d) any other instrument bearing Plaintiff's signature relating to his employment with Defendant that remains within Defendant's possession, custody, or control.

## FIRST CAUSE OF ACTION

**Statutory Penalties (Cal. Lab. Code § 1198.5(k))**

***(Against Defendant G2I INC.)***

14. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13, inclusive, as though fully set forth herein.

15. California Labor Code section 1198.5, subdivision (k), provides: "If an employer fails to permit a current or former employee, or their representative, to inspect or copy personnel records within the times specified in this section, or times agreed to by mutual agreement as provided in this section, the current or former employee or the Labor Commissioner may recover a penalty of seven hundred fifty dollars ($750) from the employer."

16. Defendant received Plaintiff's written request on April 14, 2026, and failed to permit inspection or provide copies of Plaintiff's personnel records within 30 calendar days. The statutory deadline expired on May 14, 2026. Defendant has produced no responsive records.

17. Plaintiff is therefore entitled to the statutory penalty of seven hundred fifty dollars ($750) pursuant to California Labor Code section 1198.5, subdivision (k).

## SECOND CAUSE OF ACTION

**Injunctive Relief (Cal. Lab. Code § 1198.5(l))**

***(Against Defendant G2I INC.)***

18. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 17, inclusive, as though fully set forth herein.

19. California Labor Code section 1198.5, subdivision (l), provides: "A current or former employee may also bring an action for injunctive relief to obtain compliance with this section, and may recover costs and reasonable attorney's fees in such an action." Subdivision (l) creates a statutory right to injunctive relief independent of, and in addition to, the equitable remedies available under California law.

20. Defendant continues to withhold Plaintiff's statutorily mandated personnel records. This ongoing refusal hinders Plaintiff's ability to evaluate his employment history, the circumstances surrounding his termination, and to preserve evidence necessary to protect his legal rights.

21. Plaintiff will suffer irreparable harm in the absence of injunctive relief. The personnel records sought are unique to Plaintiff's individual employment, are time-sensitive (with Defendant's retention obligations limited under California Labor Code section 1198.5, subdivision (c)), and contain information necessary to identify potential additional causes of action before applicable limitations periods expire. The balance of equities favors Plaintiff because the burden on Defendant of producing records it is statutorily required to maintain is minimal, while the harm to Plaintiff of being deprived of those records is significant and ongoing. Issuance of the injunction also serves the public interest in enforcing the personnel-records rights guaranteed by the Legislature in section 1198.5.

22. No adequate remedy at law exists because the personnel records sought are unique documents within Defendant's exclusive possession, custody, or control, and monetary damages alone cannot compel their production.

23. Plaintiff seeks a permanent mandatory injunction ordering Defendant to immediately produce for inspection and copying all personnel records relating to Plaintiff's employment that are required to be maintained and disclosed under California Labor Code section 1198.5, as well as all signed instruments required under Labor Code section 432.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CHARLES WALLACE prays for judgment against Defendant G2I INC. as follows:

1. For a permanent mandatory injunction compelling Defendant to immediately produce for inspection and copying all personnel records relating to Plaintiff as required by California Labor Code section 1198.5, and all signed instruments as required by California Labor Code section 432;

2. For a statutory penalty in the amount of seven hundred fifty dollars ($750) pursuant to California Labor Code section 1198.5, subdivision (k);

3. For reasonable attorney's fees pursuant to California Labor Code section 1198.5, subdivision (l);

4. For costs of suit incurred herein pursuant to Code of Civil Procedure sections 1032 and 1033.5, including but not limited to the court filing fee, electronic filing and service fees, fees of any process server engaged for service of process upon Defendant in Florida, postage, photocopying, and all other allowable litigation costs;

5. For pre-judgment interest at the legal rate on all sums recoverable, pursuant to California Civil Code section 3287;

6. For such other and further relief as the Court may deem just and proper.

Dated: 2026-05-18

/s/ Charles Wallace
CHARLES WALLACE
Plaintiff, In Pro Per

**VERIFICATION**

I, CHARLES WALLACE, declare:

I am the Plaintiff in the above-entitled action. I have read the foregoing COMPLAINT FOR INJUNCTIVE RELIEF AND STATUTORY PENALTIES and know its contents. The matters stated therein are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 2026-05-18, at Oroville, California.

/s/ Charles Wallace
CHARLES WALLACE

# EXHIBIT B

Charles Wallace, In Pro Per
3723 Foothill Blvd.
Oroville, CA 95966
Telephone: (346) 249-1507
Email: realcharleswallace@gmail.com

Plaintiff In Pro Per

[FOR CLERK'S USE ONLY]

FILED Superior Court of California County of Butte SEP 08 2026 Sharif Elmallah, Clerk B. KOLONAY Deputy FILED

9/12/26 10:30 am KJP #3212

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF BUTTE**

North Butte County Courthouse
1775 Concord Avenue, Chico, CA 95928

**CHARLES WALLACE**, an individual,

Plaintiff,

vs.

**G2I INC.**, a Florida Corporation; and **DOES 1 through 10, inclusive**

Defendants.

**Case No.: 26CV02192**

**FIRST AMENDED VERIFIED COMPLAINT FOR:**

**1. Whistleblower Retaliation (Lab. Code § 1102.5(b))**
**2. Retaliation (Lab. Code § 98.6)**
**3. Wrongful Discharge in Violation of Public Policy (Tameny)**
**4. Promissory Estoppel**
**5. Breach of Equity Compensation Contract and Implied Covenant of Good Faith and Fair Dealing**
**6. Fraudulent Concealment and Securities Deceit (Civ. Code §§ 1709, 1710; Corp. Code §§ 25401, 25501)**
**7. Personnel Records Penalty (Lab. Code § 1198.5(k))**

**DEMAND FOR JURY TRIAL**

**UNLIMITED CIVIL CASE**

Plaintiff CHARLES WALLACE ("Plaintiff") alleges against Defendant G2I INC. ("Defendant" or "G2i") as follows. Allegations concerning Plaintiff's own acts and words are made on personal knowledge. Remaining allegations are made on personal knowledge or on information and belief as stated.

## I. NATURE OF THE ACTION

1. This is an unlimited civil employment action. G2I INC. recruited Plaintiff as Head of Delivery — a hands-on, zero-to-one builder — and put him on a Microsoft-facing engagement. In the presence of G2I's president, Plaintiff raised, multiple times, legal limits and boundaries on what G2I could deliver. Eleven days later, on April 13, 2026, G2I discharged him.

2. This First Amended Verified Complaint amends Plaintiff's verified complaint filed on May 19, 2026. It states causes of action for whistleblower retaliation under Labor Code section 1102.5(b), retaliation under Labor Code section 98.6, wrongful discharge in violation of public policy, promissory estoppel, breach of the equity compensation contract and its implied covenant of good faith and fair dealing, fraudulent concealment and securities deceit, and the personnel-records penalty under Labor Code section 1198.5(k).

3. Plaintiff seeks the G2I wages and G2I equity lost by that discharge, according to proof, including compensation for the but-for employment horizon reflected by the four-year equity-vesting schedule; compensatory damages for bad-faith equity deprivation; the value of the Scale AI opportunity he gave up to take the job; the personnel-records penalty; statutory whistleblower penalties; physical- and emotional-distress damages, including damages for the incremental aggravation of preexisting neurological conditions; punitive damages according to proof under Civil Code section 3294; costs; and attorney's fees if and when recoverable.

3(a). Plaintiff specifically demands up to $1,233,750 in G2I base-salary loss for the compensation horizon from March 16, 2026 through March 15, 2030, after crediting $26,250 in regular salary already paid, and up to $250,000 for combined physical and emotional distress and

incremental aggravation. Each component remains subject to proof, lawful credits and offsets, mitigation, present-value adjustments where required, and nonduplication. Those presently quantified components total $1,483,750. Plaintiff separately seeks enforcement of the promised acceleration of all 15,000 options at their $6.21 exercise price, or their legally recoverable monetary value, and lost benefits and other compensatory losses according to proof. The stated subtotal identifies the presently quantified components, not an aggregate valuation of the separately requested equity, benefits, and other compensatory relief.

## II. PARTIES

4. Plaintiff is an individual residing in Oroville, County of Butte, California. In March 2026 he relocated a household from Temecula, County of Riverside, California, to Oroville. He performed the work described in this complaint remotely from California.

5. Defendant G2I INC. is a Florida corporation. G2I employed Plaintiff as Head of Delivery, directed his day-to-day work, and issued the March 12, 2026 Offer Letter described in paragraph 15. An employment-verification letter also identified Plaintiff as a full-time employee of G2I.

6. Plaintiff is ignorant of the true names of Does 1 through 10 and sues them under Code of Civil Procedure section 474. Plaintiff will amend when those names are ascertained.

7. The claims in this complaint arise from G2I's conduct as Plaintiff's employer and from independent statutory duties.

## III. JURISDICTION AND VENUE

8. This is an unlimited civil case. The amount in controversy exceeds $35,000, exclusive of interest and costs. Code of Civil Procedure section 85.

9. This Court has personal jurisdiction over G2I because G2I employed Plaintiff in California, directed his work in California, and caused the injuries alleged here.

10. Venue is proper in Butte County under Code of Civil Procedure sections 395(a) and 395.5. Plaintiff resided in Butte County and performed the work from Butte County when the discharge took effect, and G2I's records obligation was owed to him there.

## IV. FACTS

**A. Hire, recruiting pitch, written terms, and reliance**

11. On February 25, 2026, G2I's president, Gabriel Greenberg, initiated contact with Plaintiff by LinkedIn message and recruited him for the Head of Delivery role. Greenberg targeted and solicited Plaintiff specifically based on Plaintiff's background, including a Master's degree in Data Science from Harvard University and years of experience building and completing enterprise AI and RLHF evaluation pipelines. Greenberg wrote that he was looking for "someone with 0 to 1 experience that wants greater equity and operational autonomy in the human data space," that G2I was "growing extremely quickly," and that he was "looking for someone to own this growth." He wrote that G2I had "a unique focus on RL environments as infrastructure." He attached a recruiting video. Plaintiff did not apply cold. Greenberg solicited him.

12. In that recruiting video, Greenberg described the Head of Delivery role in these words: "I'm looking for a zero to one builder. Someone who's hands on." He stated: "every single executive on my team is a doer, and a builder, and then builds a team up around them." He stated: "this is definitely a builder, a zero to one." He stated that the hire would be "hands-on handling quality especially timelines working with the customers building out you know a team over time." He stated that the hire would be "partnering internally with our head of talent." He stated: "This is not a stay in your lane role." He stated: "you're going to be owning outcomes." Those statements described the character of the role G2I was offering when it asked Plaintiff to leave his then employment.

13. On March 2, 2026, Plaintiff told Greenberg he had watched the recruiting video and asked about the level of operational autonomy. Greenberg replied that G2I likes to "hire owners who want a lot of autonomy." Plaintiff thereafter continued the interview process with G2I.

14. On or about March 10, 2026, Greenberg described compensation by video, including 10,000 stock options at a $6.21 strike. On March 12, 2026, G2I issued the written Offer Letter alleged in

paragraph 15, which states 15,000 stock options. The written Offer Letter controls the option quantity.

15. On March 12, 2026, G2I issued a written Offer Letter for employment with G2I. Eduardo Brito, G2I's Head of Finance and Operations, signed it for G2I the same day. Plaintiff signed it the same day. The Offer Letter states: "Your title will be Head of Delivery, and you will report to the Company's President, Gabe Greenberg." It states a starting salary of $315,000 per year, a one-time signing bonus of $10,000, and 15,000 stock options. It required that while employed at G2I, Plaintiff "will not engage in any other employment, consulting or other business activity (whether full-time or part-time) that would create a conflict of interest with G2i," and that he have no conflicting contractual commitments. It states that the Company "will provide the hardware and tools necessary for you to effectively perform your role," including reimbursement for a laptop purchased from Apple. It required Plaintiff to execute additional agreements "relating to confidentiality or intellectual property obligations to G2i." On options, it states that the 15,000 options "will vest over a four-year period, subject to the terms of the applicable equity plan and grant agreement," and: "In the event the Company is acquired or sold prior to the completion of the four-year vesting period, any unvested shares will automatically vest at the time of such transaction." The Offer Letter is a G2I document.

16. A separate G2I Notice of Stock Option Grant dated March 16, 2026 granted 15,000 incentive stock options at $6.21 per share, vesting in equal monthly installments over four years from a March 16, 2026 vesting-commencement date while service continued. Under that monthly schedule the first vest date was April 16, 2026. The grant states that 100% of the unvested shares are subject to single-trigger acceleration in the event of a defined Change of Control during employment, subject to execution of a release in a form reasonably acceptable to G2I. Plaintiff was discharged on April 13, 2026, before any G2I option vested.

16(a). On March 10, 2026, while recruiting Plaintiff, Greenberg signed G2I's Articles of Validation. G2I filed them with the Florida Department of State at 1:25 p.m. Eastern Time on March 12, before sending Plaintiff the Offer Letter and Stock Option Grant for signature. The filing states that G2I previously had only 100,000 authorized shares, that a purported 2021 increase had not been filed, that G2I nevertheless issued 9,000,000 shares, and that 8,900,000 of those shares were excess shares constituting a defective corporate act. The filing ratified that prior act and increased G2I's authorized capitalization to 10,000,000 shares. G2I did not disclose that filing, the defective prior issuances, or the 120-day challenge period under Florida Statutes section 607.0152 to Plaintiff before he accepted the employment and equity package. In the same option agreement, G2I denied Plaintiff stockholder rights until shares issued after exercise, while Section 13 required him prospectively—if and when he became a stockholder—to waive statutory inspection rights before an initial public offering and covenant "never" to pursue them, "pursuant to Section 220 or otherwise." Section 13 combined Florida inspection-right language with a reference to Delaware section 220. Plaintiff is informed and believes, and on that basis alleges, that the timing and content of Section 13 were intended to restrict his future access to G2I's capitalization and corporate records after shares issued.

17. On March 10, 2026 — before the Offer Letter — Plaintiff told Greenberg, in writing: "I need to start doing that after I move." He repeated the move, hardware, and timing constraints on March 12, 2026, including that he was in a warehouse until about April 1 and would start with a mid-range MacBook Pro until the move was finished. G2I proceeded with the hire and with Microsoft-facing work nonetheless.

18. Before the March 16 start date, Greenberg directed Plaintiff into Microsoft-facing delivery work. On March 12, Greenberg sent a voice message that he described as "the primary things to think about for Monday." On March 13, Plaintiff wrote that he was "already building some examples or directions based on their research." Greenberg wrote that Plaintiff would "help guide part of that call along with some engineers on my team," and he

forwarded a note describing reinforcement-learning environments as important to the Microsoft work. On March 15, Plaintiff reported that documentation and plans were ready; Greenberg confirmed Plaintiff did not yet have G2I email or Slack access. G2I put him to Microsoft-facing work, and described engineers as available, while he was still moving.

19. In reliance on the recruiting communications alleged in paragraphs 11 through 13 and on the Offer Letter alleged in paragraph 15, Plaintiff accepted G2I's offer and left his then-existing full-time position at Scale AI to work for G2I. Plaintiff commenced work for G2I on March 16, 2026. Plaintiff alleges from personal knowledge that his annual base salary at Scale AI was approximately $160,000. Plaintiff also held Scale AI incentive stock option grant ES-7681, dated October 15, 2025, covering 17,640 options for Class B shares at a contractual exercise price of $2.162 per share. The grant was subject to a one-year cliff followed by monthly vesting, and none of the options had vested when Plaintiff left Scale AI. Plaintiff thereby lost the contingent opportunity to vest and exercise those options. The value of that compensation and lost opportunity is according to proof. The Offer Letter's conflict-of-interest and no-conflicting-commitment clauses made Plaintiff's departure from Scale AI foreseeable. The recruiting pitch described the role he was being asked to take. The Offer Letter stated the written terms.

**B. The April 2 meeting**

20. G2I assigned Plaintiff to lead delivery on a Microsoft-facing pilot concerning reinforcement-learning environments and related evaluation work. On April 2, 2026, in Greenberg's presence, Plaintiff introduced himself as "going to be head of delivery here." Greenberg stated that Plaintiff would run a demo and that "he's built a demo specifically for you." The Microsoft representative stated that the main goal of his trip was "looking for an opportunity to work with you" and "I want to work with you."

21. The meeting took place in person in Miami, Florida. Greenberg and a Microsoft representative were present. Plaintiff was present.

22. The Microsoft representative identified his team as responsible for bringing the technology of a frontier artificial-intelligence laboratory identified by name during the meeting (the "Frontier AI Lab") into Microsoft, stated that he had been involved in Microsoft's deal with that laboratory, and stated that the partnership was public. He stated: "Close enough that we know you." He stated: "So that's why we talked to G2i." Greenberg said G2I was "very surprised." Later in the same meeting, the Microsoft representative stated that G2I's proximity to the Frontier AI Lab was the reason Microsoft was speaking with G2I, and called G2I "Hidden." Greenberg said: "Yes, we were very hidden." The Microsoft representative stated that the Frontier AI Lab was Microsoft's partner and also named it among the frontier laboratories with which Microsoft competes in developing in-house models.

23. Greenberg stated that G2I legal had advised that, because of exclusivity, G2I could not build an RL environment, turn over the code, and allow another company to run it, but that G2I could build RL environments itself and sell trajectories. The Microsoft representative stated: "No, no, I want to buy the RL environment." Greenberg said: "We can't sell that yet," and that he did not want to break that contract. Greenberg also stated that G2I had never said anything publicly and that Microsoft had inside information. In the same exchange Greenberg said, in substance, "unless you want to just buy us." The Microsoft representative asked "Why not?" and "You're open?" Later in the same meeting the Microsoft representative stated that he wanted to buy the environment and "I don't just want to buy the data." Greenberg stated: "I guess you'd have to buy us to buy the RL environments."

24. Plaintiff, reporting to Greenberg, raised the legal limits on what G2I could deliver. Plaintiff said, in substance and in words: a. "how does that work on the legal part there if we're using the RL environment for it? If there's not the specific app or something that we built, then we can't do that. But if it's a publicly available one, then we can include it." b. "we'll include the containers and stuff that you would need to run it, as long as we didn't custom build it." c. as to the customer path then under discussion,

"I think that might be a no on that for, for the customer one right now. I'm unsure on that one."

25. The Microsoft representative then proposed another path. He said, in substance, that he would ask a professor friend to create an environment or benchmark (to generate reinforcement-learning trajectories) and push it on GitHub. Greenberg, who had described the exclusivity restriction to the room and who was Plaintiff's president and reporting line, stated: "That's probably the ideal way to do it." The Microsoft representative then said, in these words: "And make it like fully publicly available in terms of copyright. And then I say, hey, this is public." The word "copyright" was spoken in that meeting, by the Microsoft representative, in Greenberg's presence. Plaintiff heard it. Plaintiff initially uttered a conversational response ("We can do that. Yes."). After considering the proposal and hearing the intervening discussion, Plaintiff contradicted and qualified that response later in the same exchange, stating: "There's a lot of boundaries on that," and explaining that G2I could not deliver the RL environments within the container and was "kind of restricted on that component." Plaintiff proceeded from Greenberg's description of the restriction, stated in Greenberg's presence.

26. Later in the same meeting, the Microsoft representative asked how G2I could describe other labs' work "without breaking anything that you don't want to say," stated "we don't want to ask you to disclose any confidential," stated that Microsoft competes with Frontier Lab, and stated that Microsoft needed to understand what Frontier Lab participants were doing. At the close of the meeting Greenberg stated that "by Tuesday we'll have a timeline for the pilot data," and: "It's already been started. We've already started on this." Plaintiff was present for those statements. The statements in paragraphs 22 through 26 are the discussion Plaintiff addressed in Greenberg's presence and facts going to the constraints then under discussion.

27. At the time of the statements in paragraphs 24 through 26, Plaintiff had reasonable cause to believe, and did believe, that the information he was disclosing disclosed a violation of, or noncompliance with, a federal statute: the exclusive rights of a copyright owner to reproduce

a copyrighted work and to distribute copies of it to the public, 17 U.S.C. § 106(1) and (3), the violation of which is infringement under 17 U.S.C. § 501(a). He so believed as to the proposal, spoken in that meeting, that a professor create an environment or benchmark (to generate reinforcement-learning trajectories), push it on GitHub, and make it "fully publicly available in terms of copyright," after Greenberg had called that path the ideal way. Plaintiff heard the Microsoft representative use the word "copyright." He understood that word to mean the right to copy and to publish the work. He then understood that copying or publishing restricted code or a custom-built environment by that route, in order to deliver to Microsoft what G2I was not authorized to copy or distribute, would be unauthorized reproduction and distribution. The citation to 17 U.S.C. § 106(1) and (3) and § 501(a) identifies that then-existing understanding of the word spoken in the meeting. He also then believed the same path was intended to circumvent both G2I's exclusivity restriction as Greenberg had described it and limits arising from Microsoft's partnership with the Frontier AI Lab as the Microsoft representative had described them. Those two private-contract concerns are alleged as contemporaneous context. Plaintiff reasonably relied on management's description of G2I's restriction, stated in Greenberg's presence, and on the Microsoft representative's description of Microsoft's partnership with the Frontier AI Lab, of Microsoft's knowledge of G2I, and of copyright-public availability, as alleged in paragraphs 22, 23, and 25. The protected-activity predicate is the copyright statute identified above.

28. Greenberg was a person with authority over Plaintiff and a person with authority to investigate, discover, or correct the noncompliance discussed. Labor Code section 1102.5(b). Greenberg heard the statements in paragraphs 22 through 26.

29. Plaintiff raised those legal limits and boundaries more than once in Greenberg's presence during that meeting, including the statements in paragraphs 24 through 26.

**C. Work, messages, and discharge**

30. In direct contradiction to Greenberg's recruiting representations that Plaintiff would have operational autonomy to build a team around him (paragraphs 12–13), G2I unilaterally assigned a contractor team to the pilot that began work on or about Tuesday, April 7, 2026. Plaintiff did not receive or review the team members' résumés and did not interview, approve, reject, or select them; G2I had already hired the candidates and designated an engineering lead. During an onboarding call, Plaintiff asked the assigned team members whether they had prior experience with SkillsBench or RLHF pipelines, and none identified any. Based on those answers and Plaintiff's subsequent observations of their pilot work, Plaintiff understood that the assigned personnel lacked the demonstrated background or training required for the specialized reinforcement-learning and RLHF evaluation work. Their subsequent performance corroborated Plaintiff's contemporaneous assessment and created immediate operational friction.

31. Plaintiff repeatedly and expressly notified Greenberg and G2I that he was in the middle of an active personal and household move across at least five distinct occasions—putting G2I on explicit notice prior to hiring as well as throughout his employment:

(1) on March 10, 2026, prior to G2I extending any formal offer, stating in writing: "I need to start doing that after I move";

(2) on March 12, 2026, during pre-hire compensation and hardware discussions, confirming his temporary warehouse setup through approximately April 1 and explicitly stating: "I can get a mid MacBook Pro for now, then when I finish moving in we can talk about getting something serious setup for everyone at G2i";

(3) on March 16, 2026, during onboarding, confirming that he was commencing employment while actively mid-move;

(4) on April 1, 2026, prior to and during travel for the in-person Miami client meeting, confirming his ongoing physical relocation; and

(5) during the Microsoft pilot itself, when Plaintiff reiterated his physical transition constraints, to which Greenberg affirmatively reassured Plaintiff that he was "doing a great job."

G2I recruited Plaintiff, accelerated his start date, and demanded immediate execution on the Microsoft pilot with full advance and contemporaneous knowledge of these transition constraints, expressly accepting them.

32. On or about April 9 or 10, 2026, Greenberg and Plaintiff exchanged iMessages about pilot progress. Greenberg wrote: "Wanted to follow up on progress on the pilot. Out of the 50 tasks needed how many have you completed (at a medium complexity)?" Plaintiff wrote: "Theres 50 curated, but we need to validate them," and: "Validated so far the count is 3." Greenberg wrote: "Okay so we have 3 validated … so we need 47 more." Plaintiff wrote that the goal for the next day was "to hit 15-20 EOD." Greenberg replied: "Good! Glad to hear you are gonna be at 15-20 by EOD." Those messages were iMessages, not Slack. The fifty then under discussion were the assigned team's curated corpus. They were separate from, and did not overlap with, the fifty-two-task corpus Plaintiff later created.

33. Following that exchange, consistent with Greenberg's recruiting mandate that the Head of Delivery be a hands-on "zero to one builder" who "owns outcomes" (paragraph 12), Plaintiff stepped in when the assigned team struggled with the specialized SkillsBench task construction and RL-environment architecture. Plaintiff worked throughout the weekend of April 10–13, 2026 and created, directed, and iterated a separate fifty-two-task SkillsBench corpus for the pilot. All fifty-two tasks were Plaintiff's separate workstream, and none overlapped with the assigned team's fifty-task corpus alleged in paragraph 32. Plaintiff also logged nearly 2,000 task-trial iterations—specifically, 1,993 iterations—while developing and testing that separate corpus.

34. Completing the separate fifty-two-task corpus required further testing and validation through functioning company-provided model, API, and execution resources. Plaintiff contemporaneously reported that the required access was unavailable, repeatedly requested

that G2I provide or restore it, and offered to pay for the required API credits out of his own pocket and seek reimbursement later so that the work could continue. Plaintiff personally observed that the required access became usable again at approximately the time of Yip's 12:03 p.m. functionality report on April 13, 2026—approximately eight minutes before the 12:12 p.m. summons to the call on which G2I terminated Plaintiff. The prolonged unavailability and last-minute restoration left Plaintiff no meaningful opportunity to complete the remaining validation before his discharge.

35. G2I maintained a Slack workspace and used it in the ordinary course of Plaintiff's employment to assign work, discuss pilot progress and performance, and communicate about termination. On April 13, 2026, at 12:03:42 p.m. PDT, teammate Darryl Yip reported in Slack that a path he had just tried "looks like it's working." That report was of Yip's tested path. At approximately 12:09 p.m. PDT, Yip wrote in Slack, in substance, that people were getting restless about the direction of the work. At 12:12:15 p.m. PDT a G2I Slack account named `gabriel` requested that Plaintiff hop on a call immediately, with a Google Meet link. The same minute, Yip wrote that the team was "certainly not delivering 50 quality tasks or anything close to it." G2I terminated Plaintiff's employment on that call. No participant stated any reason for the discharge, including any performance reason. Plaintiff was performing the work alleged in paragraph 33 at the time of that call. He did not resign. He did not leave G2I on medical leave. Employment ended because G2I discharged him. No participant asked whether Plaintiff had completed his separate fifty-two-task corpus, what validation had been completed or remained, or whether G2I had provided or restored the resources required to finish validation. G2I summarily discharged Plaintiff without first making any such inquiry.

36. A G2I Slack account named `gabriel` directed Plaintiff to hop on the termination call. Plaintiff does not presently know who decided on termination, when that person first considered it, what internal rationales were documented, or what G2I personnel wrote to one another concerning Plaintiff's assignment or termination in Slack or email threads in which

Plaintiff was not a participant. Those facts and records are uniquely within G2I's possession, custody, or control.

37. The same calendar day, at 2:40 p.m., Daniel Pelisson emailed offboarding instructions on behalf of G2I. The email stated: "If all items listed above are completed and documented by April 14, 2026, as a compliance bonus, the company will cover the balance of your April salary through the end of the month, notwithstanding the effective termination date." Also on April 13, 2026, a letter stated that Plaintiff "is a current full-time employee at G2i Inc. as Head of Delivery," with start date March 16, 2026, and compensation of $315,000 a year.

38. On April 10, 2026—twenty-five days after Plaintiff's March 16 start date and eight days after the April 2 disclosures—G2I initiated a Checkr background check on Plaintiff and set an April 17 completion deadline. Plaintiff completed Checkr's disclosure and authorization flow on April 10 PDT, reflected as April 11 UTC. G2I discharged Plaintiff on April 13. The report was completed on April 14, after the discharge, and identifies "G2i Inc." as the requesting company. Checkr had advised Plaintiff that, once complete, it would send the report to G2I. Plaintiff later obtained the report through Checkr's candidate portal; G2I did not provide it in response to Plaintiff's records request. Plaintiff is informed and believes, and on that basis alleges, that G2I initiated the belated screening while separation was under consideration to develop after-the-fact personnel documentation or justification. The initiation and timing of the screening—not the contents of the later-completed report—are alleged as circumstantial evidence of pretext and retaliatory motive.

39. Termination occurred eleven calendar days after the April 2 discussion alleged above, three days before the first G2I option vest date of April 16, 2026, and before any G2I option had vested.

39(a). The timing of Plaintiff's discharge—three days before the first monthly vesting date, eleven days after the April 2 disclosures, and shortly after the April 2 discussion in which Greenberg raised a possible Microsoft acquisition—is circumstantial evidence that avoiding prospective equity obligations was a motivating reason for the discharge. Plaintiff alleges

that motive based on the timing and surrounding facts; G2I's internal decision records remain within its possession, custody, or control.

39(b). Before G2I hired Plaintiff, Plaintiff had a traumatic brain injury arising from military blast exposure and narcolepsy with cataplexy. Those conditions originated years before Plaintiff's employment with G2I. G2I did not cause the original traumatic brain injury or the original onset of those preexisting conditions. Notwithstanding those conditions, Plaintiff continued working for G2I through his discharge on April 13, 2026 and performed the substantial work alleged in paragraphs 32 through 35. By April 22, 2026, nine days after G2I discharged him, a signed and cosigned VA sleep-clinic note recorded Plaintiff's report of two cataplectic episodes more severe than his usual episodes, including falls on stairs and in a bathroom. Plaintiff also reported that his usual symptom-management regimen was working less effectively amid increased stress from the loss of his job. The clinicians changed his stimulant regimen and recommended stress-management treatment.

39(c). Plaintiff alleges that G2I's wrongful discharge and the resulting acute stress were substantial factors in aggravating the symptoms and functional effects of Plaintiff's preexisting traumatic brain injury and narcolepsy with cataplexy. The medical harm alleged is limited to the incremental worsening caused by G2I's wrongful conduct, and does not include the original traumatic brain injury or the preexisting baseline conditions. Plaintiff seeks compensation for that incremental worsening under the rules reflected in CACI Nos. 3927 and 3928 and according to proof.

40. Plaintiff is informed and believes, and on that basis alleges, that his April 2 disclosures were a contributing factor in the discharge. No participant stated any reason on the termination call, including any performance reason. The totality of the circumstances supports Plaintiff's inference: the eleven-day interval between the disclosures and discharge; Greenberg's presence for the disclosures; G2I's assignment of personnel who, when asked, identified no prior SkillsBench or RLHF-pipeline experience, contrary to the recruiting representations alleged in paragraphs 11 through 13 and without allowing Plaintiff to review or select the

team; the distinction between the assigned team's fifty-task corpus and Plaintiff's separate fifty-two-task corpus; Plaintiff's 1,993 task-trial iterations; G2I's prolonged failure to provide the model, API, and execution resources Plaintiff requested to finish validation and restoration only approximately eight minutes before the termination-call summons; Greenberg's favorable response to Plaintiff's stated April 9–10 progress target; G2I's initiation of the belated Checkr screening on April 10; and G2I's failure to ask Plaintiff about his separate corpus, remaining validation, or the missing resources before discharging him. These circumstances support a reasonable inference that G2I created or knowingly permitted conditions that predictably impaired completion, that discharge had been decided or was under active consideration before the last-minute restoration, and that G2I discharged Plaintiff without a good-faith assessment of his separate work.

**D. Personnel records**

41. On April 14, 2026, at 11:24 a.m. PDT, Plaintiff emailed G2I officers, including Greenberg and Eduardo Brito, a written preservation demand and a written request under Labor Code sections 1198.5 and 226. The preservation demand instructed G2I not to delete Slack, email, or related electronically stored information relating to Plaintiff, including internal communications among G2I personnel about Plaintiff even where Plaintiff was not a participant. The statutory request asked for Plaintiff's personnel file and records relating to performance, onboarding, title, compensation, employment status, and termination, including any records reflecting the reasons for termination that G2I maintained. Receipt was confirmed the same day at 11:29 a.m. PDT, and G2I officers were copied.

42. Labor Code section 1198.5(a)(1) grants a current or former employee the right to inspect and receive a copy of the personnel records the employer maintains relating to the employee's performance, including education or training records, or to any grievance concerning the employee. That right is not limited to communications addressed to or copied to the employee.

43. The iMessages alleged in paragraph 32 and the Slack messages alleged in paragraph 35 are written communications relating to Plaintiff's performance, including progress toward the pilot deliverable and the events immediately surrounding termination. Plaintiff possesses Slack messages concerning his performance and the pilot. Plaintiff is informed and believes, and on that basis alleges, that G2I also maintains additional Slack, iMessage, and email communications among G2I personnel relating to Plaintiff's performance, assignment, and termination in threads in which Plaintiff was not a participant.

44. G2I received the April 14, 2026 request on that date. The thirty-calendar-day period in Labor Code section 1198.5(b)(1) expired on May 14, 2026.

45. G2I did not permit inspection or copying of the personnel records it maintains relating to Plaintiff's performance or to any grievance concerning him within that time. Plaintiff filed the original verified complaint on May 19, 2026, alleging that nonproduction. The section 1198.5(k) penalty accrued before this action was filed.

46. The personnel records G2I maintains relating to Plaintiff's performance include the iMessages alleged in paragraph 32 and the Slack performance communications alleged in paragraphs 35 and 43. Checkr stated that it would send the completed consumer report identified in paragraph 38 to G2I, and Plaintiff is informed and believes that G2I received or maintained that report or related screening records. G2I did not provide those performance communications or Checkr materials in response to Plaintiff's records request and failed to permit inspection or copying of them.

46(a). On August 11, 2026, after Plaintiff had rejected G2I's July 27 compromise proposal and challenged G2I's August 5 production as incomplete, Eduardo Brito stated in the existing email thread, whose subject remained "Compromise proposal": "G2i possesses no additional employment records beyond what Deel has already provided." Brito also stated that Greenberg had given Plaintiff performance feedback "directly over calls." Approximately ten minutes later, counsel acting for G2I repeated the company's records position: "As Edu

said, we have now provided you with everything the companies has regarding your employment."

46(b). The categorical no-additional-records position was false when made, and Brito and G2I knew it was false. The August 5 production omitted G2I's March 12 Offer Letter, which Brito personally signed for G2I; G2I's Stock Option Grant, which Greenberg signed for G2I; and G2I's April 13 offboarding notice. Those definite G2I-originated records establish a fact-specific basis for alleging knowledge. The August 5 production also omitted the Slack performance communications and Checkr materials alleged above. G2I's origination, execution, or maintenance of the omitted records supports the inference that its categorical position was knowing, not mistaken. The observable August 11 communications are alleged as subsequent circumstantial evidence concerning G2I's knowledge and records position. The section 1198.5(k) violation alleged in Count Seven accrued on May 14, 2026.

47. G2I used Slack and iMessage in the ordinary course of Plaintiff's employment as alleged in paragraphs 32 and 35. The April 14 preservation demand and those writings are facts concerning what G2I maintained.

## V. FIRST CAUSE OF ACTION

**Whistleblower Retaliation — Labor Code § 1102.5(b)**

***(Against G2I INC.)***

48. Plaintiff incorporates paragraphs 4 through 7, 15, and 20 through 40.

49. At all relevant times G2I was Plaintiff's employer. The Offer Letter alleged in paragraph 15 required Plaintiff to report to Greenberg. Greenberg was a person acting on behalf of the employer and a person with authority over Plaintiff, within Labor Code section 1102.5(b) and (i).

50. On April 2, 2026, Plaintiff disclosed to Greenberg the information alleged in paragraphs 22 through 26. Plaintiff had reasonable cause to believe that information disclosed a violation of, or noncompliance with, a state or federal statute, rule, or regulation, as alleged in paragraph 27.

51. G2I terminated Plaintiff's employment on April 13, 2026.

52. Plaintiff's April 2 disclosure was a contributing factor in that termination. Labor Code section 1102.6. The closeness in time, Greenberg's presence for the disclosure, and the sequence alleged in paragraphs 30 through 40 support that allegation. The identity of the decisionmaker, any contemporaneous internal rationale, and internal communications relating to Plaintiff's assignment and termination in which Plaintiff was not a participant are uniquely within G2I's knowledge.

53. Plaintiff's protected disclosure was a contributing factor in G2I's decision to discharge him. No participant stated any reason on the termination call, including any performance reason. Plaintiff does not presently know what independent reason, if any, G2I recorded internally; that information is within G2I's possession, custody, or control.

54. Plaintiff has been damaged in an amount according to proof, including lost G2I wages, G2I equity, and physical and emotional distress, including the incremental aggravation alleged in paragraphs 39(b) and 39(c). Recovery under this count is limited to injuries caused by the retaliatory discharge and excludes duplicate recovery of the same injuries under other causes of action. Plaintiff also seeks the civil penalty in Labor Code section 1102.5(f), not exceeding $10,000, and attorney's fees under section 1102.5(j) to the extent recoverable.

54(a). Plaintiff seeks past and future lost G2I salary and employment benefits for the period he would have remained employed but for the unlawful discharge, including the compensation horizon from March 16, 2026 through March 15, 2030 to the extent established with reasonable certainty. The four-year vesting schedule is one circumstance supporting that claimed horizon. Plaintiff seeks this wage-and-benefit loss in addition to the distinct equity relief, with appropriate adjustments for compensation already paid, mitigation, causation, capacity, and the present value of future losses. The calculation horizon begins with employment; the claimed loss accounts for compensation already paid and does not add a further four years after termination. Plaintiff seeks no duplicate recovery of any component.

55. G2I, acting through its officers and managing agents including its President Gabriel Greenberg, committed, authorized, and ratified despicable conduct carried on with willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages under Civil Code section 3294 according to proof.

## VI. SECOND CAUSE OF ACTION

**Retaliation — Labor Code § 98.6**

***(Against G2I INC.)***

56. Plaintiff incorporates paragraphs 4 through 7, 15, and 20 through 40.

57. Labor Code section 1102.5 is part of Chapter 5, commencing with section 1101. Section 98.6(a) prohibits discharge because an employee engaged in conduct delineated in that chapter.

58. G2I discharged Plaintiff on April 13, 2026 because he engaged in the protected conduct alleged in paragraphs 24 through 28. Because that discharge occurred eleven days after that conduct—well within 90 days—a rebuttable presumption of retaliation arises in favor of Plaintiff's claim under Labor Code section 98.6(b)(1).

59. Plaintiff seeks reinstatement in the alternative to front pay, reimbursement for lost G2I wages and G2I employment benefits for the but-for employment period described in paragraph 54(a), the civil penalty in section 98.6(b)(3) to the extent not duplicative of section 1102.5(f), and other relief according to proof.

## VII. THIRD CAUSE OF ACTION

**Wrongful Discharge in Violation of Public Policy**

***(Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167)***

***(Against G2I INC.)***

60. Plaintiff incorporates paragraphs 4 through 7, 15, and 20 through 40.

61. Fundamental California public policy, as reflected in Labor Code section 1102.5 and federal copyright law (17 U.S.C. §§ 106, 501), prohibits an employer from discharging an employee for disclosing information the employee reasonably believes reveals statutory

noncompliance or for objecting to a proposed course he reasonably believes would circumvent statutory copyright protections.

62. G2I discharged Plaintiff. The protected activity alleged in paragraphs 22 through 29 was a substantial motivating reason for that discharge. No participant stated any reason on the termination call, including any performance reason. Plaintiff does not presently know what independent reason, if any, G2I recorded internally; that information is within G2I's possession, custody, or control.

63. As a direct and proximate result of G2I's wrongful discharge in violation of public policy, Plaintiff suffered compensatory damages according to proof, including lost wages and benefits for the but-for employment period described in paragraph 54(a) (in the alternative to overlapping measures under the First and Second Causes of Action), physical and emotional distress, and the incremental aggravation of his preexisting conditions alleged in paragraphs 39(b) and 39(c). Recovery for those conditions is limited to the incremental aggravation alleged in paragraphs 39(b) and 39(c), without duplicate recovery of the same injury.

63(a). G2I, acting through its officers and managing agents including its President Gabriel Greenberg, committed, authorized, and ratified conduct with oppression, fraud, and malice, and in willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages under Civil Code section 3294 according to proof.

## VIII. FOURTH CAUSE OF ACTION

### Promissory Estoppel

***(Against G2I INC.)***

64. Plaintiff incorporates paragraphs 4 through 7, 11 through 19, 30 through 35, 37, 39, and 40.

65. G2I promised Plaintiff, in the Offer Letter, the Head of Delivery title, a $315,000 salary, a $10,000 signing bonus, 15,000 stock options subject to the applicable equity terms, a reporting line to Greenberg, and full-time employment with G2I that required him not to continue conflicting other employment. G2I also expressly promised to "provide the hardware and tools necessary for you

to effectively perform your role." Those written terms were sufficiently clear to induce action.

66. In addition to the written Offer Letter terms, G2I expressly promised Plaintiff during recruitment that the Head of Delivery would be an executive "zero to one" builder who would own outcomes, build a team around himself over time, and partner with G2I's talent function in doing so. Greenberg also told Plaintiff that G2I likes to "hire owners who want a lot of autonomy." G2I made those promises to induce Plaintiff to accept the position and leave Scale AI, and Plaintiff reasonably understood and relied on them as promises concerning his operational authority, the building of his team, and the character of the work he was being recruited to perform.

66(a). G2I's assignment of the initial pilot personnel without Plaintiff's review or selection, together with its failure to provide functioning model, API, and execution resources needed to complete the assigned work despite Plaintiff's repeated requests, materially deprived Plaintiff of the operational role and necessary means of performance G2I had promised. Plaintiff alleges that nonperformance based on the combined staffing, work, resource, and discharge circumstances described in paragraphs 30 through 35 and 40.

67. G2I intended that Plaintiff rely, and Plaintiff reasonably did rely, by resigning from Scale AI and losing the contingent opportunity to vest and exercise grant ES-7681 as alleged in paragraph 19, and by commencing work for G2I, including the household disruption of an accelerated start during a disclosed move and the pre-start Microsoft-facing work alleged in paragraph 18.

68. Plaintiff performed substantial work in the promised hands-on role, including the separate fifty-two-task corpus and trial iterations alleged in paragraph 33. The resource interruptions alleged in paragraph 34 impeded completion of the further validation that work required. G2I discharged Plaintiff on April 13, 2026, shortly after the reported restoration of a tested execution path and without the inquiry alleged in paragraph 35. The discharge occurred

before the first G2I option vest date of April 16, 2026, and before any G2I option had vested.

69. Plaintiff pleads promissory estoppel in the alternative to contractual enforcement of the same promise, to the extent that promise is not enforceable as a contract for lack of bargained-for consideration. In that alternative, injustice can be avoided only by enforcing the promise to the extent of Plaintiff's reliance, measured by the Scale AI opportunity given up and related reliance losses, according to proof. This reliance measure is pleaded in the alternative to any overlapping wage-loss measure under the First, Second, and Third Causes of Action, without duplicate recovery.

## IX. FIFTH CAUSE OF ACTION

**Breach of Equity Compensation Contract and Implied Covenant of Good Faith and Fair Dealing**

**(Bad-Faith Deprivation of Vesting Equity and Change of Control Rights)**

***(Against G2I INC.)***

70. Plaintiff incorporates paragraphs 4 through 7 and 11 through 40.

71. The equity compensation provisions of G2I's Offer Letter and Stock Option Grant alleged in paragraphs 15 and 16 formed a binding written compensation agreement between Plaintiff and G2I. Plaintiff accepted those terms, commenced employment, and furnished services through April 13, 2026, including the work alleged in paragraphs 18, 20, and 32 through 35. The at-will employment term governed the duration of employment; the express equity terms governed the compensation benefits and conditions described below. The implied covenant attached to G2I's performance of those express compensation obligations and required G2I to refrain from using independently unlawful conduct to prevent Plaintiff from receiving the benefits of those provisions.

72. The Stock Option Grant provided for 15,000 incentive stock options vesting in equal monthly installments while Plaintiff continued providing services. It further provided that 100% of the unvested options were subject to acceleration if a defined Change of Control

occurred during Plaintiff's employment and Plaintiff executed a release in a form reasonably acceptable to G2I. The Offer Letter separately stated that if G2I was acquired or sold before completion of the four-year vesting period, all unvested shares would automatically vest at the time of that transaction.

73. On April 2, 2026, the Microsoft representative identified his team as responsible for bringing the Frontier AI Lab's technology into Microsoft and stated that G2I's proximity to that laboratory was Microsoft's reason for speaking with G2I. During the same meeting, after Microsoft stated that it wanted G2I's reinforcement-learning environments rather than only data, Greenberg stated that, if a pilot worked well, helped Microsoft's model, and did not create benchmark deficiencies, it could be a potential next step and "a really good start to a relationship." Greenberg then twice presented acquisition of G2I as a means of overcoming G2I's contractual exclusivity: "unless you want to just buy us" and "you'd have to buy us to buy the RL environments." The Microsoft representative responded "Why not?," asked "You're open?," and stated "We're open." Greenberg stated "I'd be open" and invited a further conversation. Those exchanges presented a concrete exploratory acquisition path tied to G2I's reported proximity to the Frontier AI Lab, its constrained reinforcement-learning assets, and the pilot that Plaintiff was then assigned to lead, not a completed or binding transaction.

74. Eleven days after those acquisition discussions, and just three days before Plaintiff's initial monthly option vesting date of April 16, 2026, G2I abruptly discharged Plaintiff while pilot deliverables were actively in progress. No participant stated any reason on the termination call, including any performance reason, and no participant asked whether Plaintiff's separate fifty-two-task corpus was complete, what validation remained, or whether G2I had supplied the resources required to complete it.

75. Plaintiff was ready, willing, and able to continue providing services to G2I and, upon a qualifying Change of Control, to execute a release in a form reasonably acceptable to G2I. Plaintiff is informed and believes, and on that basis alleges, that G2I unlawfully discharged

him in retaliation for the April 2 disclosures alleged in paragraphs 24 through 29 and 40 and, at least in part, to prevent continued monthly vesting and remove him from eligibility for transaction-related acceleration, as alleged in paragraph 39(a). Under the prevention doctrine recognized under the Stock Option Grant's selected Florida law and under analogous California law, G2I may not rely on the failure of a continued-service or employment-status condition to the extent its wrongful discharge caused that failure.

75(a). By the independently unlawful discharge alleged above, G2I wrongfully prevented Plaintiff from satisfying the continued-service condition of the express monthly-vesting promise. Plaintiff alleges that the condition is excused to the extent G2I's unlawful conduct caused its failure and that G2I's failure to recognize the monthly installments due on that basis breached the equity compensation agreement, including the implied covenant attached to performance of its vesting provisions. Plaintiff seeks recognition or restoration of those installments, or their legally recoverable value, only for the period he proves he would have continued providing qualifying services but for the unlawful discharge. Transaction-related relief remains subject to the additional findings alleged in paragraph 76.

76. The staffing, resource, access, and discharge sequence alleged in paragraphs 30 through 40 impaired the Microsoft pilot and removed its lead while deliverables remained in progress. Plaintiff is informed and believes that this conduct affected the concrete acquisition opportunity described in paragraph 73, which was reasonably probable in light of Microsoft's stated desire to acquire G2I's reinforcement-learning environments, Greenberg's repeated invitation to pursue an acquisition, Microsoft's affirmative response, and the pilot's intended role in advancing that relationship. Plaintiff alleges that G2I's wrongful conduct impaired, diverted, delayed, or restructured that identified transaction opportunity and removed Plaintiff from the employment and transaction position for which the acceleration protection was promised. Plaintiff seeks the promised 100% acceleration of all 15,000 options, or their value according to proof, upon establishing either: (a) that a qualifying Change of Control occurred during the period Plaintiff would have remained employed but

for G2I's wrongful discharge, and the discharge caused the continued-employment condition to fail; or (b) that G2I's actionable conduct actually and legally caused a qualifying transaction involving the identified Microsoft opportunity not to occur, or to be delayed, diverted, or restructured so as to defeat the acceleration condition. Under the prevention and condition-excuse principles alleged above, Plaintiff seeks full acceleration without a completed transaction where G2I wrongfully caused that same qualifying condition to fail. If full acceleration is not awarded, Plaintiff seeks, in the alternative, the legally recoverable fair value of the conditional acceleration opportunity G2I wrongfully impaired, as proved with reasonable certainty and accounting for transaction probability and timing, continued service, the release condition, exercise price, marketability, and transfer restrictions.

77. As the primary contractual equity remedy under the prevention and condition-excuse theories alleged above, Plaintiff seeks enforcement of the promised 100% acceleration of all 15,000 options or their value according to proof, subject to the findings required by paragraph 76. Plaintiff also seeks the separate salary-and-benefit losses alleged under the First, Second, and Third Causes of Action, including the claimed four-year compensation horizon described in paragraph 54(a) to the extent proved with reasonable certainty. Wage and benefit loss and option acceleration are distinct compensation components; Plaintiff seeks both to the extent each is recoverable and proved, without duplicate recovery of any component. If full acceleration is not awarded, Plaintiff alternatively seeks any legally recoverable fair value of the impaired conditional acceleration opportunity and any available equitable restoration or extension of option rights.

77(a). To the extent not included in any full-acceleration recovery, Plaintiff seeks enforcement of the monthly-vesting obligation or damages for its breach. That recovery is limited to the installments that would have vested during the period Plaintiff would have continued providing qualifying services but for G2I's unlawful discharge, as established with reasonable certainty, subject to the applicable option terms and condition-excuse principles alleged in paragraph 75. Plaintiff seeks a single recovery of each lost equity benefit.

## X. SIXTH CAUSE OF ACTION

**Fraudulent Concealment and Securities Deceit**

**(Civ. Code §§ 1709, 1710; Corp. Code §§ 25401, 25501)**

***(Against G2I INC.)***

78. Plaintiff incorporates paragraphs 4 through 7 and 11 through 19.

79. G2I offered Plaintiff an option to purchase 15,000 shares of its Common Stock. An option on a security is a security within Corporations Code section 25019. Plaintiff's Temecula address appeared on the Grant Notice. G2I directed the Offer Letter's equity offer and the Stock Option Grant to Plaintiff in Temecula, Riverside County, California, and Plaintiff received those communications there. Plaintiff electronically accepted each document while physically present in Temecula. Having elected to describe the option package and expressly represent that both governing documents were attached, G2I had a duty not to suppress facts necessary to keep those specific representations from being materially misleading.

80. On March 12, 2026, before sending Plaintiff the Offer Letter and Stock Option Grant for signature, G2I filed the Articles of Validation alleged in paragraph 16(a), addressing 8,900,000 excess shares from a defective prior corporate issuance and increasing its authorized capitalization from 100,000 to 10,000,000 shares.

81. The undisclosed corporate-validation history and related equity communications implicated distinct Florida, California, and federal protections. Under Florida law, Florida Statutes section 607.0152(4) requires any challenge to the effectiveness of a ratification of defective corporate action to be brought within 120 days after the validation effective time, while section 607.1602 grants qualifying shareholders inspection rights and subsection (6) prohibits a corporation from abolishing or limiting those rights through its articles or bylaws. G2I did not disclose the Articles of Validation, the defective prior issuances, or the limited challenge period before Plaintiff accepted the equity package. Section 13 instead purported, if and when Plaintiff became a stockholder, to make him "unconditionally and irrevocably" waive inspection rights under the Florida Business Corporation Act and

covenant "never" to pursue them "pursuant to Section 220 or otherwise," although G2I is a Florida corporation and the Agreement selects Florida law. Plaintiff alleges that Section 13 was intended to impede his future access to G2I's capitalization records and is void or unenforceable to the extent it would limit any inspection right that applicable Florida law makes nonwaivable.

81(a). Under California law, Corporations Code sections 1600(d) and 1601(b), when their shareholder-status and foreign-corporation nexus requirements apply, prohibit limitation of the statutory inspection rights through articles or bylaws; Civil Code section 1668 prohibits a contract from exempting a person from responsibility for fraud, willful injury, or violation of law; and Corporations Code section 25401 prohibits an issuer from offering or selling a security in California by a communication containing a material untrue statement or material omission. The Grant Notice represented that G2I's 2026 Equity Incentive Plan and Stock Option Agreement were "both" attached and made part of the grant. The authenticated 23-page execution packet contained the Agreement and exercise forms but not the Plan, even though the Agreement incorporated the Plan, supplied definitions through it, and made the option subject to it. The undisclosed validation involved an 8,900,000-share prior excess issuance and a 100-fold increase in authorized shares. Plaintiff alleges that a reasonable recipient evaluating equity compensation would consider the governing Plan and that capitalization history important. He further alleges that the false attachment statement, the omitted incorporated Plan, the undisclosed corporate validation, and the prospective inspection waiver together made G2I's equity communications materially misleading in violation of Corporations Code section 25401. G2I's offer was directed to Plaintiff in Temecula, California, and received there; the offer or sale was therefore made in California as alleged.

81(b). The Agreement expressly stated that the Plan and Agreement were intended to comply with Securities and Exchange Commission Rule 701, 17 C.F.R. section 230.701. Rule 701(e) requires an issuer relying on that exemption to deliver the applicable compensatory plan or

contract, and Rule 701(e)(6) governs the time for option-related disclosure before exercise. The preserved execution packet did not include the incorporated Plan. Plaintiff does not presently recall receiving the Plan separately, and no separately delivered copy has been located in the records reviewed. Whether G2I made any separate delivery is within G2I's records and remains subject to proof. California Corporations Code section 25102(o) makes compliance with Rule 701, as then in effect, a condition of California's employee-option qualification exemption. Plaintiff pleads the missing Plan as evidence of potential Rule 701 noncompliance and a related California exemption defect, subject to proof that G2I relied on Rule 701 and that the applicable disclosure deadline matured.

82. Greenberg personally signed both the Articles of Validation and the Grant Notice. The Grant Notice communicated by G2I stated that the Plan and Agreement were "both" attached, but the execution packet transmitted for signature did not contain the Plan. G2I, through the person or persons who assembled and transmitted that packet, possessed information identifying its contents. Plaintiff is informed and believes that Greenberg and those persons knew the attachment statement was false when made and knew that the validation history had not been disclosed; the identities, communications, and full knowledge of those persons are within G2I's possession. G2I made the materially incomplete equity communications to obtain Plaintiff's acceptance of the option and employment package and his departure from Scale AI.

83. Plaintiff reasonably relied on G2I's materially incomplete equity representations and had no knowledge of the undisclosed corporate defects or the 120-day statutory challenge window when he accepted the employment and equity package. Although Section 13 appeared in the signed packet, Plaintiff did not then know the validation history to which its inspection language could relate. Plaintiff presently recalls discovering the Articles of Validation and their relationship to the equity package in or about May 2026. Had G2I timely disclosed the validation history and supplied the complete governing equity documents, Plaintiff would not have

made the same decision to leave Scale AI and accept the G2I package on the terms presented.

84. Plaintiff acquired the Option directly from G2I as part of the compensation offered for accepting employment and providing services. No shares vested or were exercised before G2I terminated him, and the Option expired by its terms 90 days after termination. Plaintiff therefore no longer owns it. To the extent those facts establish a purchase from G2I within Corporations Code section 25501, Plaintiff seeks only the purchaser damages, attorney's fees, and costs prescribed by that statute, measured according to proof. Independently, Plaintiff seeks common-law reliance damages proximately caused by the concealment, without duplicate recovery.

85. Greenberg was G2I's president and an officer, personally signed the validation filing and Grant Notice, and personally participated in the equity transaction. Plaintiff is informed and believes that Greenberg authorized or ratified the materially misleading attachment statement and omission alleged above. Plaintiff alleges that this officer-level conduct constituted fraud within Civil Code section 3294 and seeks punitive damages according to proof.

## XI. SEVENTH CAUSE OF ACTION

**Personnel Records — Statutory Penalty**

**Labor Code § 1198.5(k)**

***(Against G2I INC.)***

86. Plaintiff incorporates paragraphs 4 through 7, 15, 35, and 41 through 47.

87. Plaintiff is a former employee of G2I. Labor Code section 1198.5(a)(1). G2I employed him under the Offer Letter alleged in paragraph 15 and discharged him as alleged in paragraph 35.

88. On April 14, 2026, Plaintiff made a written request to inspect and receive a copy of the personnel records G2I maintains relating to his performance or to any grievance concerning him, including written communications G2I maintained relating to his performance.

Labor Code section 1198.5(b). That request was not limited to documents addressed to Plaintiff.

89. G2I did not permit inspection or copying within 30 calendar days of receipt. That statutory period expired on May 14, 2026, before this action was filed. The original verified complaint alleged that failure under penalty of perjury.

90. Plaintiff is entitled to the statutory penalty of $750. Labor Code section 1198.5(k).

## XII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against G2I INC. as follows:

1. On the First Cause of Action: damages according to proof; the civil penalty under Labor Code section 1102.5(f) not exceeding $10,000; attorney's fees under Labor Code section 1102.5(j) if and when recoverable; and punitive damages according to proof.

2. On the Second Cause of Action: lost G2I wages and G2I employment benefits according to proof; reinstatement or front pay in the alternative; and the civil penalty under Labor Code section 98.6(b)(3) to the extent not duplicative.

3. On the Third Cause of Action: general and compensatory damages according to proof, including physical- and emotional-distress damages and compensation for the incremental aggravation of preexisting conditions alleged in paragraphs 39(b) and 39(c), without duplicate recovery; and punitive damages according to proof.

4. On the Fourth Cause of Action: reliance damages according to proof, not duplicative of overlapping wage-loss measures.

5. On the Fifth Cause of Action: enforcement of the promised 100% acceleration of all 15,000 options, or their value, under the prevention and condition-excuse theories alleged in paragraphs 75 and 76; alternatively, any legally recoverable compensatory and equitable relief for the impaired conditional acceleration opportunity. To the extent not included in a full-acceleration recovery, enforcement of the monthly-vesting obligation or damages for its breach as alleged in paragraph 77(a), without duplicate recovery. This equity relief is sought in addition to the distinct salary-and-benefit loss requested under the First, Second, and

Third Causes of Action, including the four-year compensation horizon described in paragraph 54(a) to the extent proved, without duplicate recovery of any component.

6. On the Sixth Cause of Action: common-law reliance damages according to proof; to the extent Plaintiff establishes the statutory predicates alleged in paragraph 84, purchaser damages, attorney's fees, and costs as prescribed by Corporations Code section 25501; no duplicate recovery; and punitive damages under Civil Code section 3294 according to proof. Plaintiff is a veteran under Government Code section 18540.4, having served full time in the United States Air Force during a national emergency and received an honorable discharge. The deceptive equity communications alleged in Count Six induced him to relinquish his Scale AI employment, causing loss of that source of income. Upon the findings required by Civil Code sections 3294 and 3345(a)(3) and (b)(2), Plaintiff seeks enhancement of otherwise recoverable punitive damages up to three times the amount otherwise imposed.

7. On the Seventh Cause of Action: $750 statutory penalty under Labor Code section 1198.5(k).

7(a). As to the overlapping compensatory demands above, a single recovery of G2I base-salary loss not exceeding $1,233,750 and combined physical- and emotional-distress and incremental-aggravation damages not exceeding $250,000, each subject to proof and the adjustments alleged in paragraph 3(a); separately proved benefits and other compensatory losses; and the distinct equity relief requested in item 5, without duplicate recovery.

8. Costs of suit.

9. Prejudgment interest as allowed by law.

10. Such other and further relief as the Court deems just.

## XIII. JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: 9/8/26

[signature]

CHARLES WALLACE
Plaintiff, In Pro Per

**VERIFICATION**

I, Charles Wallace, am the Plaintiff in this action. I have read the foregoing First Amended Verified Complaint and know its contents. The matters stated in it are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 8 Sep, 2026, at Oroville, California.

Charles Wallace

Charles Wallace, In Pro Per
3723 Foothill Blvd.
Oroville, CA 95966
Telephone: (346) 249-1507
Email: realcharleswallace@gmail.com

Plaintiff In Pro Per

[FOR CLERK'S USE ONLY]

FILED
Superior Court of California
County of Butte
SEP 08 2026
Sharif Elmallah, Clerk
B. KOLONAY Deputy
FILED

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF BUTTE**

North Butte County Courthouse
1775 Concord Avenue, Chico, CA 95928

**CHARLES WALLACE**, an individual,

Plaintiff,

vs.

**G2I INC.**, a Florida Corporation; and **DOES 1 through 10, inclusive**

Defendants.

**Case No.: 26CV02192**

**NOTICE OF FILING FIRST AMENDED COMPLAINT AS OF RIGHT**

**UNLIMITED CIVIL CASE**

Plaintiff Charles Wallace, In Pro Per, gives notice:

1. No answer, demurrer, or motion to strike has been filed. Plaintiff therefore amends once as of right. Code of Civil Procedure section 472, subdivision (a).

2. The First Amended Verified Complaint filed with this notice is directed to G2I INC. and Does 1 through 10.

3. Plaintiff will serve the First Amended Verified Complaint on G2I INC. in the manner provided for service of summons. G2I INC. is an existing defendant. Under Code of Civil Procedure section 471.5, subdivision (a), the affected defendant has 30 days after service of the amendment to answer, unless the Court directs otherwise.

4. Plaintiff understands that a substantive amendment, once served on a defaulted defendant, opens the default entered August 13, 2026, as to the new pleading. That is the filing Plaintiff has elected.

Dated: 9/8/26

CHARLES WALLACE
Plaintiff, In Pro Per

# EXHIBIT C

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Charles Wallace, Pro Se (In Pro Per)<br>FIRM NAME:<br>STREET ADDRESS: 3723 Foothill Blvd<br>CITY: Oroville STATE: CA ZIP CODE: 95966<br>TELEPHONE NO.: (346) 249-1507 FAX NO.:<br>EMAIL ADDRESS: realCharlesWallace@gmail.com<br>ATTORNEY FOR *(name)*: Plaintiff, In Pro Per | | FILED<br>Superior Court of California<br>County of Butte<br>5/19/2026<br>Sharif Elmallah, Clerk<br>By [signature] Deputy<br>Electronically FILED |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** BUTTE<br>STREET ADDRESS: 1775 Concord Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Chico, CA 95928<br>BRANCH NAME: North Butte County Courthouse | | |
| CASE NAME:<br>CHARLES WALLACE v. G2I INC., et al. | | |
| **CIVIL CASE COVER SHEET**<br>☑ **Unlimited** (Amount demanded exceeds $35,000) ☐ **Limited** (Amount demanded is $35,000 or less) | **Complex Case Designation**<br>☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CASE NUMBER: 26CV02192<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Asbestos**
- ☐ Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/Unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☑ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Employment Development Department (EDD)**
- ☐ EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Comprehensive groundwater adjudication (47)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. Is this case complex under rule 3.400 of the California Rules of Court? ☐ Yes ☑ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):*

a. ☑ monetary
b. ☑ nonmonetary; declaratory or injunctive relief
c. ☐ punitive

4. Number of causes of action *(specify):* 2

5. Is this case a class action suit? ☐ Yes ☑ No

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 2026-05-18

Charles Wallace
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/ Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Asbestos**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Product Liability *(not asbestos or toxic/ environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collections Case–Seller Plaintiff
- Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition re Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Employment Development Department (EDD)**
- EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Comprehensive Groundwater Adjudication (47)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister-State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
  - Mechanic's Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition



**For your protection and privacy, please press the Clear button after you have printed the form.**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
Superior Court of California
County of Butte
JUN 2 4 2026
Sharif Elmallah, Clerk
By ______ Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

G2I INC., a Florida Corporation; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

CHARLES WALLACE, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SUPERIOR COURT OF CALIFORNIA, COUNTY OF BUTTE
North Butte County Courthouse; 1775 Concord Avenue, Chico, CA 95928

CASE NUMBER:
*(Número del Caso):*
26CV02192

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles Wallace (Pro Se / In Pro Per), 3723 Foothill Blvd, Oroville, CA 95966. Tel: (346) 249-1507. Email: realcharleswallace@gmail.com

DATE: JUN 2 4 2026 Sharif Elmallah Clerk, by ______, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [x] on behalf of *(specify):* G2I INC., a Florida Corporation

under: [x] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*

4. [ ] by personal delivery on *(date)*:





For your protection and privacy, please press the Clear This Form button after you have printed the form.
Print this form Save this form Clear this form

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name & Address): TELEPHONE NO: | FOR COURT USE ONLY |
|---|---|
| ATTORNEY FOR (Name): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF BUTTE**<br>☐ Butte County Courthouse, One Court Street, Oroville, CA 95965, (530) 532-7002<br>■ North Butte County Courthouse, 1775 Concord Avenue, Chico, CA 95928, (530) 532-7009 | FILED<br>Superior Court of California<br>County of Butte<br>JUN 29 2026<br>Sharif Elmallah, Clerk<br>By [signature] Deputy |
| PLAINTIFF(S): CHARLES WALLACE<br>DEFENDANT (S): G2I INC | |
| **NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 26CV02192 |

1. NOTICE is given of Assignment of the above entitled case for all purposes to Judge **Stephen E Benson**.
2. NOTICE is given that the Case Management Conference is scheduled as follows:

Date: **December 16, 2026** Time: **10:30 A.M.** Court Facility: ■ CHICO (1775 CONCORD AVE, CHICO)

**PLAINTIFF/CROSS COMPLAINANT MUST SERVE THIS NOTICE WITH SUMMONS AND COMPLAINT/CROSS COMPLAINT**

3. You **must** file and serve a completed Case Management Statement at least fifteen days before the conference.
4. You **must** be familiar with the case and be fully prepared to participate effectively in the Case Management Conference by personal or remote appearance. For instructions on scheduling remote appearances, visit the "Online Services" section of our website at www.buttecourt.ca.gov. Note remote appearances must be scheduled at least 16.5 hours before the hearing start time.
5. At the Case Management Conference, the court shall make pretrial orders, including but not limited to:
   a. Establishing a discovery schedule.
   b. Ordering the case to mediation or arbitration.
   c. Dismissing fictitious defendants.
   d. Scheduling exchange of expert witness information.
   e. Setting subsequent conferences and the trial date.
   f. Consolidating cases.
   g. Severing trial of cross-complaints or bifurcating trial of issues.
   h. Determining when demurrers, motions to strike and other motions are to be noticed.

*** * * Note: Counsel and Parties Should Review CRC §3.720-3.730. * * ***

**Tentative Rulings:** Although not applicable to Case Management Conferences, the Court advises counsel that for law and motion matters, the Court follows the tentative ruling procedure set forth in CRC § 3.1308(a)(1) and in Local Rule 2.9: tentative rulings on law and motion matters will be available on the Court's website at www.buttecourt.ca.gov and by telephone at (530) 532-7022 by 3:00 p.m on the Court day preceding the hearing. By 4 p.m. that same day, a party must notify all other parties and the Court of their intention to argue. If timely notice is not given, no oral argument will be permitted unless the court has directed the parties to provide further argument in its tentative ruling.

**** Sanctions ****

If you do not, (1) file the Case Management Statement, (2) attend the Case Management Conference personally or by telephone (or have counsel attend for you), and/or (3) you (or counsel appearing for you) do not participate effectively in the conference, the court may impose sanctions (including dismissal of the case and payment of money).

I declare under penalty of perjury that I am not a party to this action, am at least 18 years of age and that I personally mailed a copy of this Notice of Assignment & Case Management Conference with the conference date and hearing time inserted to Charles Wallace, a person representing the plaintiff/cross-complainant.

Date: June 29, 2026 Sharif Elmallah, Clerk of the Court, by Evalyn Yanez, Deputy.

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State, Bar number, and address)*:
**Charles Wallace <realCharlesWallace@gmail.com>**
**3723 Foothill Blvd**

TELEPHONE NO.: **346-249-1507** FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: **CHARLES WALLACE**

*FOR COURT USE ONLY*

FILED
Superior Court of California
County of Butte
6/29/2026
Sharif Elmallah, Clerk
By [signature] Deputy
Electronically FILED

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF BUTTE**
STREET ADDRESS: **1775 Concord Ave**
MAILING ADDRESS: **1775 Concord Ave**
CITY AND ZIP CODE: **Chico 95928**
BRANCH NAME: **North Butte County Courthouse**

PLAINTIFF/PETITIONER: **CHARLES WALLACE**

DEFENDANT/RESPONDENT: **G2I INC., a Florida corporation**

CASE NUMBER: **26CV02192**

Ref. No. or File No.: **REF-26409071**

## PROOF OF SERVICE OF SUMMONS

BY FAX

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of *(specify documents)*:
**SUMMONS; VERIFIED COMPLAINT; BLANK - CASE MANAGEMENT STATEMENT; ALTERNATIVE DISPUTE RESOLUTION PACKET; BLANK - STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (**

3. a. Party served *(specify name of party as shown on documents served)*:
**G2I INC., a Florida corporation**

b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b whom substituted service was made) *(specify name and relationship to the party named in item 3a )*:
**Carolina Agostinli, Intake Specialist and person authorized to accept for Gabriel Greenberg.**
**I delivered the documents to Carolina Agostinli who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 35-45 years of age, 5'4"-5'6" tall and weighing 120-140 lbs.**

4. Address where the party was served:
**9284 Lake Serena Dr, Boca Raton, FL 33496**

5. I served the party *(check proper box)*

a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **06/29/2026** at *(time)*: **11:28 AM**
**Carolina Agostinli**
**I delivered the documents to Carolina Agostinli who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 35-45 years of age, 5'4"-5'6" tall and weighing 120-140 lbs.**

b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

(1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

(2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

| PLAINTIFF/PETITIONER: CHARLES WALLACE | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: G2I INC., a Florida corporation | 26CV02192 |

(3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

(4) ☐ I thereafter caused to be mailed (by first class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc § 415.20). Documents were mailed on *(date):* from *(city):* **or** ☐ a declaration of mailing is attached.

(5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

c. ☐ **by mail and acknowledgement of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):* (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify)* **G2I INC., a Florida corporation c/o Gabriel Greenberg, Registered Agent**

under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

a. Name: **Kathy Frizzell**
b. Address: **272 Saxony F, Delray Beach, FL 33446**
c. Telephone number: **561-685-3753**
d. The fee for service was: **$ 106.00**
e. I am:

(1) ☒ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☐ registered California process server:
(i) ☐ owner ☐ employee ☐ independent contractor. For:

**BY FAX**

(ii) ☐ Registration No.: Registration #:

(iii) ☐ County: County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and I certify** that the foregoing is true and correct.

Date: 06/29/2026

**Kathy Frizzell**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

K Frizzell 3212
(SIGNATURE)

CIV-100

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.
NAME: Charles Wallace, In Pro Per
FIRM NAME:
STREET ADDRESS: 3723 Foothill Blvd
CITY: Oroville STATE: CA ZIP CODE: 95966
TELEPHONE NO.: (346) 249-1507 FAX NO.:
E-MAIL ADDRESS: realcharleswallace@gmail.com
ATTORNEY FOR (name): Plaintiff CHARLES WALLACE

FOR COURT USE ONLY

FILED
Superior Court of California
County of Butte
AUG 13 2026
Sharif Elmallah, Clerk
By ______ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF BUTTE
STREET ADDRESS: 1775 Concord Avenue
MAILING ADDRESS: 1775 Concord Avenue
CITY AND ZIP CODE: Chico, CA 95928
BRANCH NAME: North Butte County Courthouse

Plaintiff/Petitioner: CHARLES WALLACE, an individual
Defendant/Respondent: G2I INC., a Florida Corporation; and DOES 1 through 10, inclusive

**REQUEST FOR (Application)** [x] **Entry of Default** [ ] **Clerk's Judgment** [ ] **Court Judgment**

CASE NUMBER: 26CV02192

**Not for use in actions under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.);** (see form CIV-105)

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on *(date)*: 05/19/2026
   b. by *(name)*: CHARLES WALLACE
   c. [x] Enter default of defendant *(names)*:
      G2I INC., a Florida Corporation
   d. [ ] I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names)*:
      *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*
   e. [ ] Enter clerk's judgment
      (1) [ ] for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         [ ] Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) [ ] under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) [ ] for default previously entered on *(date)*:

2. **Judgment to be entered.**

| | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| a. Demand of complaint | $ | $ | $ |
| b. Statement of damages* | | | |
| (1) Special | $ | $ | $ |
| (2) General | $ | $ | $ |
| c. Interest | $ | $ | $ |
| d. Costs *(see reverse)* | $ | $ | $ |
| e. Attorney fees | $ | $ | $ |
| f. **TOTALS** | $ | $ | $ |

   g. **Daily damages** were demanded in complaint at the rate of: $ per day beginning *(date)*:
   *(* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)*

3. [ ] *(Check if filed in an unlawful detainer case.)* **Legal document assistant or unlawful detainer assistant** information is on the reverse *(complete item 4)*.

Date: 08/13/2026

CHARLES WALLACE
(TYPE OR PRINT NAME)

(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

***FOR COURT USE ONLY***
(1) [x] Default entered as requested on *(date)*: AUG 13 2026
(2) [ ] Default NOT entered as requested *(state reason)*:
Sharif Elmallah Clerk, by ______, Deputy



Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2023]

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

Code of Civil Procedure, §§ 585-587, 1169
www.courts.ca.gov

| Plaintiff/Petitioner: CHARLES WALLACE, an individual<br>Defendant/Respondent: G2I INC., a Florida Corporation; and DOES 1 through 10, inclusive | CASE NUMBER:<br>26CV02192 |
|---|---|

4. **Legal document assistant or unlawful detainer assistant (Bus. & Prof. Code, § 6400 et seq.).** A legal document assistant or unlawful detainer assistant [ ] did [x] **did not** for compensation give advice or assistance with this form. If declarant has received **any** help or advice for pay from a legal document assistant or unlawful detainer assistant, state:
   a. Assistant's name:
   b. Street address, city, and zip code:
   c. Telephone no.:
   d. County of registration:
   e. Registration no.:
   f. Expires on *(date):*

5. [x] **Declaration under Code Civ. Proc., § 585.5** *(for entry of default under Code Civ. Proc., § 585(a)).* This action
   a. [ ] is [x] is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).
   b. [ ] is [x] is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).
   c. [ ] is [x] is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing (Code Civ. Proc., § 587).** A copy of this *Request for Entry of Default* was
   a. [ ] **not mailed** to the following defendants, whose addresses are unknown to plaintiff or plaintiff's attorney *(names):*
   b. [x] **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:
      (1) Mailed on *(date):* 08/13/2026
      (2) To *(specify names and addresses shown on the envelopes):*
      Shawn C. Helms, Esq., McDermott Will & Schulte LLP
      2801 N. Harwood St., Ste. 2600
      Dallas, TX 75201

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date: 08/13/2026

Taylor Atchison
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF DECLARANT)

7. **Memorandum of costs** *(required if money judgment requested).* Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):
   a. Clerk's filing fees .................... $
   b. Process server's fees ................. $
   c. Other *(specify):* $
   d. $
   e. **TOTAL** ............................ $ ________
   f. [ ] Costs and disbursements are waived.
   g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing item 7 is true and correct.

Date:

(TYPE OR PRINT NAME)

▶
(SIGNATURE OF DECLARANT)

| Plaintiff/Petitioner: CHARLES WALLACE, an individual<br>Defendant/Respondent: G2I INC., a Florida Corporation; and DOES 1 through 10, inclusive | CASE NUMBER:<br>26CV02192 |
|---|---|

8. **Declaration of nonmilitary status** *(required for a judgment).*
No defendant/respondent named in item 1c is in the military service of the United States as defined by either the Servicemembers Civil Relief Act (see 50 U.S.C. § 3911(2)) or California Military and Veterans Code sections 400 and 402(f).

I know that no defendant/respondent named in item 1c is in the U.S. military service because *(check all that apply)*:

a. ☐ the search results that I received from https://scra.dmdc.osd.mil/ say the defendant/respondent is not in the U.S. military service.
b. ☐ I am in regular communication with the defendant/respondent and know that they are not in the U.S. military service.
c. ☐ I recently contacted the defendant/respondent, and they told me that they are not in the U.S. military service.
d. ☐ I know that the defendant/respondent was discharged from U.S. military service on or about *(date)*:
e. ☐ the defendant/respondent is not eligible to serve in the U.S. military because they are:
☐ incarcerated ☐ a business entity
f. ☐ other *(specify)*:

**Note**
- U.S. military status can be checked online at *https://scra.dmdc.osd.mil/.*
- If the defendant/respondent is in the military service, or their military status is unknown, the defendant/respondent is entitled to certain rights and protections under federal and state law before a default judgment can be entered.
- For more information, see *https://selfhelp.courts.ca.gov/military-defaults.*

I declare under penalty of perjury under the laws of the State of California that the foregoing item 8 is true and correct.

Date:

(TYPE OR PRINT NAME) ▶ (SIGNATURE OF DECLARANT)



For your protection and privacy, please press the Clear button after you have printed the form. Print Save Clear

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: TELEPHONE NO:

ATTORNEY FOR *(Name)*:

FOR COURT USE ONLY

FILED
Superior Court of California
County of Butte
JUN 2 9 2026
Sharif Elmallah, Clerk
By ________ Deputy
FILED

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF BUTTE**

☐ Butte County Courthouse
One Court Street, Oroville, CA 95965
(530) 532-7002

■ North Butte County Courthouse
1775 Concord Avenue, Chico, CA 95928
(530) 532-7009

PLAINTIFF(S): CHARLES WALLACE

DEFENDANT (S): G2I INC

**NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE**

CASE NUMBER: 26CV02192

1. NOTICE is given of Assignment of the above entitled case for all purposes to Judge **Stephen E Benson**.
2. NOTICE is given that the Case Management Conference is scheduled as follows:

Date: **December 16, 2026** Time: **10:30 A.M.** Court Facility: ■ CHICO (1775 CONCORD AVE, CHICO)

**PLAINTIFF/CROSS COMPLAINANT MUST SERVE THIS NOTICE WITH SUMMONS AND COMPLAINT/CROSS COMPLAINT**

3. You **must** file and serve a completed Case Management Statement at least fifteen days before the conference.
4. You **must** be familiar with the case and be fully prepared to participate effectively in the Case Management Conference by personal or remote appearance. For instructions on scheduling remote appearances, visit the "Online Services" section of our website at www.buttecourt.ca.gov. Note remote appearances must be scheduled at least 16.5 hours before the hearing start time.
5. At the Case Management Conference, the court shall make pretrial orders, including but not limited to:
   a. Establishing a discovery schedule.
   b. Ordering the case to mediation or arbitration.
   c. Dismissing fictitious defendants.
   d. Scheduling exchange of expert witness information.
   e. Setting subsequent conferences and the trial date.
   f. Consolidating cases.
   g. Severing trial of cross-complaints or bifurcating trial of issues.
   h. Determining when demurrers, motions to strike and other motions are to be noticed.

*** * * Note: Counsel and Parties Should Review CRC §3.720-3.730. * * ***

**Tentative Rulings:** Although not applicable to Case Management Conferences, the Court advises counsel that for law and motion matters, the Court follows the tentative ruling procedure set forth in CRC § 3.1308(a)(1) and in Local Rule 2.9: tentative rulings on law and motion matters will be available on the Court's website at www.buttecourt.ca.gov and by telephone at (530) 532-7022 by 3:00 p.m on the Court day preceding the hearing. By 4 p.m. that same day, a party must notify all other parties and the Court of their intention to argue. If timely notice is not given, no oral argument will be permitted unless the court has directed the parties to provide further argument in its tentative ruling.

****Sanctions****

If you do not, (1) file the Case Management Statement, (2) attend the Case Management Conference personally or by telephone (or have counsel attend for you), and/or (3) you (or counsel appearing for you) do not participate effectively in the conference, the court may impose sanctions (including dismissal of the case and payment of money).

I declare under penalty of perjury that I am not a party to this action, am at least 18 years of age and that I personally mailed a copy of this Notice of Assignment & Case Management Conference with the conference date and hearing time inserted to Charles Wallace, a person representing the plaintiff/cross-complainant.

Date: June 29, 2026 Sharif Elmallah, Clerk of the Court, by Evalyn Yanez, Deputy.

Charles Wallace, In Pro Per
3723 Foothill Blvd.
Oroville, CA 95966
Telephone: (346) 249-1507
Email: realcharleswallace@gmail.com

Plaintiff In Pro Per

[FOR CLERK'S USE ONLY]

FILED
Superior Court of California
County of Butte
SEP 08 2026
Sharif Elmallah, Clerk
By ______ Deputy
FILED

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF BUTTE**

North Butte County Courthouse
1775 Concord Avenue, Chico, CA 95928

**CHARLES WALLACE**, an individual,

Plaintiff,

vs.

**G2I INC.**, a Florida Corporation; and **DOES 1 through 10, inclusive**

Defendants.

**Case No.: 26CV02192**

**NOTICE OF FILING FIRST AMENDED COMPLAINT AS OF RIGHT**

**UNLIMITED CIVIL CASE**

Plaintiff Charles Wallace, In Pro Per, gives notice:

1. No answer, demurrer, or motion to strike has been filed. Plaintiff therefore amends once as of right. Code of Civil Procedure section 472, subdivision (a).

2. The First Amended Verified Complaint filed with this notice is directed to G2I INC. and Does 1 through 10.

3. Plaintiff will serve the First Amended Verified Complaint on G2I INC. in the manner provided for service of summons. G2I INC. is an existing defendant. Under Code of Civil Procedure section 471.5, subdivision (a), the affected defendant has 30 days after service of the amendment to answer, unless the Court directs otherwise.

4. Plaintiff understands that a substantive amendment, once served on a defaulted defendant, opens the default entered August 13, 2026, as to the new pleading. That is the filing Plaintiff has elected.

Dated: 9/8/26

CHARLES WALLACE
Plaintiff, In Pro Per